**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Irene Diaz,<br>Plaintiff,<br>v.<br>Phoenix Union High School District,<br>Defendant. | No. CV-24-00643-PHX-KML<br>**ORDER** |

Plaintiff Irene Diaz alleges Phoenix Union High School District (the "District") violated the Americans with Disabilities Act through disability discrimination, retaliation, and a hostile work environment. Her claims arise from her working relationship with a former supervisor, Claudio Coria, who she contends repeatedly demeaned and excluded her because of a perceived disability. The District moves for summary judgment on all claims. Because Diaz does not oppose summary judgment on her standalone discrimination and retaliation claims and the record does not support a disability-based hostile work environment, the motion is granted.

## I. Background

This case concerns the working relationship between Diaz and Coria at Phoenix Union High School District. Diaz has worked for the District since 2000 and has spent much of her career in student discipline, safety, and security. (Doc. 52-1 at 11, 14–16.) Coria supervised Diaz from 2016 to 2018 and again from 2022 to 2024. (Docs. 38 at 104–05; 52-1 at 106.)

Coria first became Diaz's supervisor in 2016, when Diaz was Supervisor of Student Discipline, Safety, and Security. (Doc. 52-1 at 14, 18.) Diaz claims Coria repeatedly told her not to speak at District presentations or meetings because she did not "speak clearly enough" or "speak correctly." (Doc. 52-1 at 22–23.) She has a vocal cord disorder that sometimes affects her speech but, according to Diaz, has not prevented her from communicating or performing her work. (Doc. 52-1 at 22–23.) Around then, Diaz raised a complaint to a human-resources administrator about Coria's comments. (Doc. 38 at 19, 37–39.) Coria denies his criticism concerned a speech impairment and maintains he provided feedback about Diaz's presentation style and responsiveness to criticism. (Doc. 38 at 104–05.)

In 2018, Coria issued Diaz a performance evaluation containing both positive and negative feedback. (*See* Doc. 52-4.) Of the 17 performance metrics for which Coria provided ratings, he rated her as "highly effective" or "effective" for 14, "developing" for one, and "ineffective" for two. (Doc. 52-4 at 3–17.) In comments, Coria raised issues about Diaz's defensiveness when receiving feedback or assistance, and encouraged her to work on building trust with other team members. (*See* Doc. 52-4 at 5, 13–14.) Diaz complained the evaluation was unfair and inaccurate, claiming Coria cut her off while speaking, acted dismissively, and treated her with hostility. (Doc. 38 at 20.) The District investigated Diaz's concerns, including through outside counsel, and determined the complaints were unsubstantiated. (Doc. 38 at 20, 105.) In that process, the District reassigned Diaz from Coria to a different supervisor and evaluator. (Doc. 38 at 20.) In March 2019, Diaz and the District entered a settlement agreement under which the District agreed to amend her 2017–2018 evaluation and Diaz released any employment-related claims arising through the date of the agreement. (Doc. 52-6 at 2–3.) The agreement does not mention Coria or any other supervisor. (*See* Doc. 52-6 at 2–3.)

Diaz also claims Coria repeatedly characterized her as having a "learning disability," which she does not have. (Doc. 52-1 at 39–42.) Diaz testified Coria made those remarks at least ten times between 2019 and 2023. (Doc. 52-1 at 39–40.) Diaz could not

identify when within the period from 2019 to 2023 Coria made the learning-disability remarks and testified Coria made them only when she was alone with him, sometimes standing close enough that she could smell his breath. (Doc. 52-1 at 40–42, 48.) She claimed the remarks were "usually accompanied" by comments questioning why the District hired her and remarking on her competence to perform her job, but then elaborated that he made the competence-related comments publicly in meetings. (Doc. 52-1 at 39–41.) Coria denies ever telling Diaz she had a learning disability. (Doc. 38 at 106.)

In 2022, the District reorganized and created a new Safety Division. Diaz became Director of Student Health and Safety, with responsibilities involving student health and health testing, while many of her former campus-security responsibilities were transferred to a different role. (Doc. 38 at 105.) Coria became Executive Director of the Safety Division in July 2022, and Diaz was once again assigned to report to him. (Doc. 38 at 105.)

Several disputes followed this reorganization. For example, Diaz's office was moved in 2022 following a renovation. (Docs. 38 at 20; 52-1 at 67–68.) Most Safety Division employees' offices were located on one side of the District's central office building, but Diaz's was on the other side near her former division. (Docs. 38 at 20; 52-1 at 70.) According to the administrator responsible for office assignments, the placement resulted from space limitations and Diaz's need for continued coordination with her former division; Coria was not involved in the decision. (Doc. 38 at 20.) Diaz, however, testified the same administrator told her "Claudio had me put you here." (Doc. 52-1 at 71.) Diaz also testified that Coria directed her to leave a meeting while asking other employees to remain for a follow-up in July 2022. (Doc. 52-1 at 53–57.) She was upset by this because she "never [had been] asked to leave a meeting." (Doc. 52-1 at 56.) Coria stated the follow-up concerned campus-security matters outside Diaz's revised responsibilities and that he invited Diaz to stay after she objected. (Doc. 38 at 106.)

In September 2022, Diaz emailed District officials saying the District "should never have placed [her] under the supervision of [her] harasser" and Coria had begun exhibiting his "harassing and bullying behaviors again." (Doc. 52-7 at 2–3.) Diaz stated she was "back

in the same hostile environment" and asked for a new evaluator, but maintained she would still be willing to work with Coria. (Docs. 52-1 at 95–97; 38 at 63.) The District quickly approved her request for a new evaluator, but Coria remained Diaz's supervisor. (Docs. 38 at 42, 68; 52-1 at 97–98.)

The conflict continued in 2023. Diaz testified that during the 2023 spring semester she received an invitation to a team meeting—in which Diaz allegedly had a role "related to student health"—only five minutes before it began at another campus and she therefore could not attend. (Doc. 52-1 at 59–60.) She also testified she had been placed on a classroom-emergency-kit committee but did not receive some meeting invitations directly and instead learned of them from other committee members. (Doc. 52-1 at 60–63.) Diaz acknowledged she did not know who was responsible for sending the invitations to either group. (Doc. 52-1 at 63, 65.) According to Coria, Diaz was never excluded from meetings related to her position in student health and safety. (Doc. 38 at 106.)

Diaz also testified that between July 2022 and July 2023, Coria repeatedly questioned why the District had hired her, whether she was qualified, what was "wrong" with her, and whether she understood her work. (Doc. 52-1 at 91–93.) Coria also made Diaz do assignments "over and over again." (Doc. 52-1 at 92.) In March 2023, Diaz emailed District officials after Coria told her she needed to notify him whenever she was away from the central office building. (Doc. 38 at 42, 70.) A District official spoke with Coria, told him Diaz did not need to provide that notice, and directed him not to interact with Diaz unless necessary for their work. (Doc. 38 at 42–43.) In June, Diaz received a calendar invitation from Coria's assistant identifying Coria as the person who would conduct her final evaluation. (Doc. 38 at 72–73.) Diaz immediately complained that the invitation was "another example of the continued harassment" she had experienced. (Doc. 38 at 72.) The District official responsible for the earlier evaluator change says the invitation resulted from an outdated evaluator list; the District confirmed that another administrator remained Diaz's evaluator and Coria did not evaluate her. (Doc. 38 at 43.)

Two former District employees who worked with Diaz and Coria corroborate

aspects of Diaz's account of Coria's treatment through this period. They state Coria publicly belittled Diaz, disparaged her competence, ignored or rolled his eyes at her during meetings, and attempted to exclude her from Safety Division work. (Docs. 52-12 at 3–4; 52-13 at 3–4.) Neither identifies any disability-related statement by Coria. (Docs. 52-12 at 3–4; 52-13 at 3–4.)

In July 2023, Diaz filed an EEOC charge alleging disability discrimination and retaliation and identifying the alleged conduct as a "continuing action." (Doc. 52-5 at 2.) The charge recounted Coria's earlier comments about Diaz's speech and alleged learning disability, claiming that after becoming her supervisor again he excluded her from meetings and speaking opportunities, separated her from her team, required her to report when she left the building, and routinely bullied, belittled, and criticized her. (Doc. 52-5 at 2.) Diaz stated that, "[u]nder the circumstances," she believed she was being discriminated against based on an actual or perceived disability and retaliated against for complaining about discrimination. (Doc. 52-5 at 2.)

In February 2024, she emailed a District official to report "recent and continued harassment and retaliation," including additional exclusion from Safety Division activities. (Doc. 52-10 at 2–3.) She also described a January 2024 meeting during which her voice cracked because of vocal cord dysfunction and Coria responded, "well, let's go on until you can catch your breath." (Doc. 52-10 at 2.) In the same email, Diaz said she retorted to Coria, "I don't need to catch my breath. You know I have vocal cord dysfunction," and that Coria's treatment embarrassed her and caused anxiety. (Doc. 52-10 at 2.) Later that month, Diaz submitted FMLA documentation referencing panic attacks and contemplating intermittent absences from work. (Doc. 52-9 at 2–5.)

Between 2023 and 2025, Diaz received favorable performance evaluations. Her 2024 and 2025 evaluations both rated her "highly effective" for each performance standard. (Docs. 52-2 at 2–5; 52-3 at 2–11.) Coria stopped supervising Diaz in June 2024, when the District dismantled the Safety Division and his position changed to leadership coach. (Doc. 52-1 at 106.)

Beyond Diaz, several other employees complained about Coria and alleged similar behavior toward them, including concerns about his tone, dismissiveness, feedback/evaluation scores, and treatment of subordinates. (Doc. 52-11 at 15–17, 20–22, 24–26, 28–34, 58–59.) At least four employees specifically objected to the fairness of Coria's evaluations. (Doc. 52-11 at 59.) One employee complained that Coria belittled and patronized him, insinuating he was stupid or incompetent. (Doc. 38 at 30.) The District investigated those complaints and concluded none warranted discipline. (Doc. 52-11 at 16–17, 22, 32–33.)

The EEOC issued Diaz a right-to-sue notice and she filed this action in March 2024. (Doc. 1 at 1, 9.) She alleges the District violated the ADA through disability discrimination, retaliation, and a hostile work environment. (Doc. 1 at 1–4.) The District moves for summary judgment on all three theories. (Doc. 38.)

## II. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III. Analysis

The District moves for summary judgment on Diaz's claims of disability discrimination, retaliation, and hostile work environment.

### A. Discrimination and Retaliation

The District moved for summary judgment on Diaz's disability-discrimination and retaliation claims, arguing the challenged actions did not constitute actionable adverse employment actions, the District had legitimate reasons for them, and Diaz lacked evidence connecting them to either disability discrimination or protected activity. (Doc. 38 at 8–13.) Diaz did not substantively respond to those arguments as to her standalone discrimination and retaliation claims and instead focused on administrative exhaustion and the merits of her hostile-work-environment claim. (Doc. 44 at 10–18.) Although Diaz characterizes portions of that alleged hostile environment as retaliatory, she does not separately apply the elements of an ADA retaliation claim or respond to the District's arguments concerning causation, adverse action, or its asserted legitimate reasons for the challenged conduct.

A party's failure to address a claim or issue in summary-judgment briefing is properly treated as forfeiture, and a district court may rely on that forfeiture in granting summary judgment. *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1152 (9th Cir. 2025); *Est. of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th Cir. 2011). Arguments directed at one claim do not preserve a distinct claim requiring a different analysis. *Damiano*, 140 F.4th at 1152. The District carried its initial Rule 56 burden on the standalone discrimination and retaliation claims, and Diaz identifies no argument or evidence creating a genuine dispute as to those standalone claims. She therefore has forfeited opposition to her standalone discrimination and retaliation claims and the District is entitled to summary judgment on them.

### B. Hostile Work Environment

Diaz's remaining theory is that Coria's alleged conduct subjected her to a disability-based hostile work environment. The District challenges both Diaz's exhaustion of that theory and its merits.

**1. Exhaustion**

The District first argues Diaz failed to exhaust a hostile-work-environment claim because her EEOC charge did not expressly use that phrase. (Doc. 38 at 13–14.) A plaintiff may pursue claims that are "like or reasonably related to" the allegations in the administrative charge or that fall within the scope of an investigation reasonably expected to grow from the charge. *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002). EEOC charges are construed liberally, and "[t]he crucial element of a charge of discrimination is the factual statement contained therein." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002).

Diaz's EEOC charge satisfies that standard. She checked boxes alleging disability discrimination and retaliation, framing the discrimination as "continuing action." (Doc. 52-5 at 2.) Her charge recounted Coria's disability-related remarks and alleged that after Coria became her supervisor again he excluded her from meetings and work activities, separated her from her team, routinely bullied and belittled her, and consistently criticized her. (Doc. 52-5 at 2.) She claimed that "[u]nder the circumstances" she was being discriminated against based on an actual or perceived disability and retaliated against for complaining about discrimination. (Doc. 52-5 at 2.) An investigation into whether that alleged continuing course of discriminatory and retaliatory harassment created a hostile working environment could reasonably be expected to grow from such a charge. *See Freeman*, 291 F.3d at 636. Diaz therefore exhausted her hostile-work-environment theory.

**2. Merits**

To establish a disability-based hostile work environment claim, a plaintiff must show she was subjected to harassment because of a disability and that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. *See Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024) (citing *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 798 (9th Cir. 2003)); *see also Cooper v. Dignity Health*, 438 F. Supp. 3d 1002, 1016 (D. Ariz. 2020), *aff'd*, No. 20-15377, 2021 WL 3667225 (9th Cir. Aug. 18, 2021). A person is regarded as having a disability under

the ADA if she is subjected to prohibited action because of an actual or perceived physical or mental impairment. 42 U.S.C. § 12102(1)(C), (3)(A); *see Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 434 (9th Cir. 2018). Unpleasant workplace conduct, even when repeated, is not actionable without evidence connecting it to an actual or perceived impairment. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108–09 (9th Cir. 2008). If the causal link is met, the court considers whether the harassment was sufficiently severe or pervasive. *Manatt*, 339 F.3d at 798. The environment must be both subjectively and objectively abusive, with objective hostility assessed under the totality of the circumstances (including the conduct's frequency and severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the employee's work). *Mattioda*, 98 F.4th at 1175–76. Harassment from a supervisor has a "potentially greater impact" than harassment from coworkers. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 445 (9th Cir. 2017).

Diaz does not provide evidence from which a reasonable jury could find that Coria's broader workplace mistreatment occurred because of a perceived disability. It is not enough that Coria's conduct was hostile, demeaning, or unfair; Diaz must identify evidence sufficient to support a reasonable finding that the challenged harassment occurred because of disability.[1] *See Mattioda*, 98 F.4th at 1174–75; *see also Surrell*, 518 F.3d at 1108–09 (affirming summary judgment where plaintiff presented no evidence the supervisor's comments were based on race). Diaz and her coworkers describe Coria as questioning her competence, belittling and ignoring her, excluding her from meetings and work, requiring her to redo assignments, and directing her to report her whereabouts. But neither those acts themselves nor the supporting employees' accounts connect that treatment to an actual or perceived disability. Moreover, several of those allegations—such as Coria's criticism of Diaz's competence, qualifications, and understanding of her work—were leveled at her job performance. Such criticism does not support a discriminatory hostile-work-environment

[1] Diaz's response seemingly attempts to evade the causal disability-nexus requirement. She states a hostile-work-environment claim requires that she was subjected to "conduct of a discriminatory nature," citing *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678 (9th Cir. 2017). (Doc. 44 at 13.) *Reynaga* required "verbal or physical conduct of a racial nature." *Id.* at 686 (simplified). The corresponding requirement in Diaz's case is harassment because of disability. *Mattioda*, 98 F.4th at 1174–75.

claim absent evidence connecting it to the protected characteristic. *See Surrell*, 518 F.3d at 1108–09; *Chamat v. Geithner*, 381 F. App'x 728, 730 (9th Cir. 2010) (concluding negative comments concerning job performance did not establish harassment based on any protected characteristic). Any basis for treating those facially-neutral workplace disputes as disability-based therefore must come from the surrounding circumstances. *See Mattioda*, 98 F.4th at 1174–75.

The evidence concerning Coria's treatment of other employees provides additional context. *See Hughes v. DeJoy*, No. 24-5865, 2026 WL 446413, at *1 (9th Cir. Feb. 17, 2026) (supervisor's similar disparagement of plaintiff and another employee undermined an inference the comments were motivated by race or disability). Other employees complained about similar conduct, including Coria's tone, dismissiveness, evaluations, belittling, and competence-focused criticism. (*See, e.g.*, Doc. 38 at 30 (school principal complained Coria belittled and patronized him and made him feel incompetent).) That Coria allegedly treated other employees similarly does not by itself foreclose Diaz's claim; harassment may remain actionable even when employees outside the protected group also experience similar conduct. *See Sharp v. S&S Activewear, L.L.C.*, 69 F.4th 974, 982 (9th Cir. 2023). But those other complaints show Coria's tone, dismissiveness, belittling, and competence-focused criticism were not unique to Diaz, and there is no evidence connecting those forms of mistreatment to her perceived disability. That similar treatment therefore weighs against an inference that Coria's facially-neutral mistreatment of Diaz was motivated by disability. *See Hughes*, 2026 WL 446413, at *1; *see also Surrell*, 518 F.3d at 1108–09; *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.").

That does not mean facially-neutral conduct must be disregarded. Such conduct may contribute to a discriminatory hostile work environment when other surrounding

circumstances support a connection to the protected characteristic. *See Mattioda*, 98 F.4th at 1175 (considering broader mistreatment together where the alleged harassment began after disclosure of plaintiff's disabilities and included disability-related accusations, a disability-linked employment threat, and more favorable treatment of nondisabled employees); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004) (recognizing facially-neutral comments may carry discriminatory meaning in context); *Alfano*, 294 F.3d at 378 (requiring "some circumstantial or other basis" for inferring that facially-neutral incidents were discriminatory). But Diaz identifies no connection between disability and the broader workplace disputes she describes: she points to no disability-related statement accompanying those incidents and no comparative or other circumstantial evidence (such as timing) suggesting they were disability-based. *Cf. EEOC v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 846–47 (9th Cir. 2005) (holding facially-neutral conduct could support sex-based harassment where circumstantial evidence showed qualitative and quantitative differences in the treatment of women and men). Diaz's own testimony further separates the two: she described Coria's competence-focused comments during meetings as occurring publicly but the claimed learning-disability remarks happened only when the two were alone. (Doc. 38 at 83–84.)

Diaz relies primarily on Coria's alleged learning-disability remarks to connect his broader workplace conduct to disability.[2] Those remarks must be considered together with the surrounding workplace conduct to the extent the evidence supports a connection between them. *See Mattioda*, 98 F.4th at 1175. At summary judgment, Diaz must provide specific facts rather than conclusory assertions. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). A plaintiff's testimony should not be disregarded merely because it is self-serving or uncorroborated, but self-serving testimony may not create a genuine issue of material fact for summary judgment if it lacks detailed facts or supporting

[2] Although Diaz's EEOC charge and complaint could be read to suggest she intended to raise vocal cord dysfunction as a disability too (Docs. 1 at 2; 52-5 at 2), her summary-judgment briefing developed no argument on that basis. Accordingly, the court analyzes her disability-discrimination claim based on a perceived learning disability only. *See Pierce v. Multnomah Cnty., Or.*, 76 F.3d 1032, 1037 n.3 (9th Cir. 1996) (limiting basis for ruling to grounds supported by argument in the briefing).

evidence. *See Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999) ("vague, uncorroborated, and clearly self-interested testimony" did not create a genuine issue for trial); *see also F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015).

Diaz asserts Coria told her she had a "learning disability" at least ten times between 2019 and 2023, but when repeatedly pressed to identify any specific occasion on which he did so, she could not. When asked when Coria first made such a statement during that period, Diaz responded only that he "just said it all the time at different meetings." (Doc. 38 at 84.) When counsel asked again for "a specific instance," Diaz instead described generally that Coria made the remarks only when he had an opportunity to speak to her privately and would stand close enough that she could smell his breath. (Doc. 38 at 84–85.) A plaintiff need not identify discriminatory conduct by precise date, particularly when alleging repeated or pervasive conduct, so long as her testimony supplies enough detail for a reasonable factfinder to conclude the conduct occurred. *See Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1035 (9th Cir. 2005). But unlike other interactions which Diaz could describe specifically (*see, e.g.*, Doc. 38 at 96–97), Diaz never identified a single meeting, approximate time, surrounding event, or other specific occasion associated with any of the asserted ten remarks.

Diaz's generalized assertion that the remarks occurred at least ten times over four years therefore supplies little factual support beyond the asserted number itself. *See Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1194 (9th Cir. 2016) (holding self-serving affidavit without detailed facts and supporting evidence insufficient to raise triable issue of fact); *Hussey v. City of Las Vegas*, No. 25-1254, 2026 WL 64287, at *1 (9th Cir. Jan. 8, 2026) (plaintiff failed to raise triable issue of fact on hostile-work-environment claim when he recalled one discrimination-related comment and "alluded to ten other comments about which he could not recall the details"); *cf. Dominguez-Curry*, 424 F.3d at

1035 (holding a lack of precise dates and verbatim recollection did not defeat hostile-work-environment claim where the testimony supplied sufficient detail). Diaz's testimony is too generalized to supply the missing circumstantial link between the alleged learning-disability remarks and Coria's broader facially-neutral workplace conduct. *See Gordon*, 819 F.3d at 1194; *cf. Dominguez-Curry*, 424 F.3d at 1035.

Finally, even assuming Coria made the alleged learning-disability remarks at least ten times over a four-year period and Diaz could connect his broader course of conduct to a perceived disability, the claim would still fail because the alleged harassment was not sufficiently severe or pervasive. *See Salehian v. Nev. State Treasurer's Off.*, No. 23-3384, 2024 WL 4763689, at *2 (9th Cir. Nov. 13, 2024) (eleven alleged incidents insufficiently pervasive or hostile); *see also Hussey*, 2026 WL 64287, at *1. Many of the incidents Diaz specifically described were limited in scope or corrected with no lasting effect. (*See, e.g.*, Doc. 38 at 43, 107 (the District rescinded Coria's directive that Diaz report when leaving the building and Coria never conducted the evaluation mistakenly assigned to him).) Diaz also testified Coria sometimes entered her personal space and his treatment caused embarrassment and anxiety. But even considering those allegations and circumstances together—including that Coria was Diaz's supervisor, *see Zetwick*, 850 F.3d at 445—the record does not show Coria used his authority to threaten Diaz's employment, discipline her, adversely affect her evaluations, or otherwise create a sustained pattern of interference with her ability to perform her work. *Cf. Mattioda*, 98 F.4th at 1175–76.[3] Diaz remained a District director with substantial responsibilities, was not disciplined or threatened with loss of her position, and continued to receive highly favorable performance evaluations. Although those facts are not independently dispositive, they bear on whether the alleged harassment unreasonably interfered with Diaz's work. *See id.* Considering the alleged conduct as a whole, a reasonable employee may have found Coria demeaning, dismissive,

[3] In *Mattioda*, the plaintiff alleged years of disability-related comments, resistance to accommodations, an employment threat tied to his disabilities, reduced performance ratings, and impaired professional opportunities and compensation. 98 F.4th at 1168–71. Even then, the Ninth Circuit described the severe-or-pervasive question as a "close call" at the motion-to-dismiss stage. *Id.* at 1175.

or difficult, but no reasonable jury could find the working environment objectively hostile within the meaning of the ADA.

Accordingly,

**IT IS ORDERED** the District's motion for summary judgment (Doc. 38) is **GRANTED**. The Clerk of Court shall enter judgment in favor of defendant and close this case.

Dated this 28th day of August, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**